## May et al. v. Pratt.

(Decided February 10, 1931.)

A. B. COMBS for appellants.

JAMES & HOBSON for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Prior to the year 1900, Martha Pratt, who owned a large tract of land on Beaver creek in Floyd county, died intestate, survived by her husband and several children, one of whom was Alex Pratt. On July 5, 1900, B. L. C. May, who had purchased the interest of his wife, Arzilla May, one of the children of Martha Pratt, and Wilburn Pratt, another child, brought suit against Wm. Pratt and others to partition the land. At that time Alex Pratt, whose name sometimes appears in the proceeding as Alice Pratt, was 12 years of age. Process was issued against Wm. Pratt, Alice Pratt, and others, and was executed on W. H. Pratt on July 17, 1900. On October 4, 1900, another summons was issued against Wm. Pratt, Alex Pratt, and others, which does not appear to have been served on either Alex Pratt or his father, W. H. Pratt. The original petition having been lost, a substituted petition was filed in the month of March, 1901. Among the defendants named in the substituted petition was Alec Pratt. An answer was filed on behalf of all the defendants, and sworn to by Wm. Pratt, denying certain allegations of the petition and asking that the petition be dismissed. A separate answer was also filed by defendant Wm. Pratt. Plaintiffs then joined issue by a reply. On April 5, 1901, commissioners were appointed to partition the land in eight equal parts. On August 19, 1901, the commissioners filed their report partitioning the land, and allotting tract 3 to Elise Pratt. On September 4, 1901, B. L. C. May, one of the plaintiffs, filed an amendment stating that he had purchased the tracts allotted to the Aultman & Taylor Company, who had acquired the interests of M. M. Pratt and Wm. Pratt at an execution sale, and filed with the amendment the written assignment of the Aultman & Taylor Company. On the same day the commissioners' report of partition was affirmed, and the master commissioner directed to convey the tracts belonging to Aultman & Taylor Company to B. L. C. May. On October 26, 1904, the court entered the following order: "And it appearing Felix T. May is now

the owner by purchase of the life estate of William Pratt, and of the shares allotted to Wilburn Pratt, James Pratt, Ambrose Pratt, Francis Pratt, and Alex Pratt, it is therefore ordered by the court that S. C. Ferguson, Master Commissioner of this court make and execute a deed of conveyance to said Felix T. May for each of said shares as described in said commissioner's report.'' On October 29, 1904, a special master commissioner produced and acknowledged in open court the deeds which he had been directed to make.

Shortly after coming of age Alex Pratt brought this suit against the widow, heirs, and administrator of F. T. May, to whom his share in his mother's land had been conveyed by the commissioner, to set aside so much of the judgment in the partition proceeding as directed the conveyance of said land, and to recover the land, together with damages for waste. He alleged that at the time of the institution of the action he was an infant 12 years of age, that his infancy was not disclosed in the record, that no process had been executed on him, or any one for him, and that the judgment adjudging Felix T. May to be the owner of the share allotted to him was void. He filed with the petition the record of the original partition suit. In addition to denying the allegations of the petition the defendants pleaded by way of counter-claim and cross-petition against Wm. Pratt, the father of Alex Pratt, that he induced Felix T. May to purchase the interest of Alex Pratt, and to pay to him for the use and benefit of Alex Pratt the sum of $250, which was the full value of the property at the time, and that Alex Pratt, in conjunction with his father, at the time of such payment, signed, executed, and delivered to Felix May the writing purporting to be a title bond which had been mislaid, and which would be filed when found; that thereafter on April 30, 1902, the defendant in cross-petition, Wm. Pratt, reinvested the said $250 in a tract of land located in Morgan county, and described in the deed from John W. Bays to W. H. Pratt and J. T. Watts; that to the extent of the money paid for the land in controversy Wm. Pratt became a trustee for the use and benefit of F. T. May, and that, if the court should finally be of the opinion that Alex Pratt was entitled to avoid the contract of sale and recover the property, the defendants were entitled to be subrogated to the rights and equities of Alex Pratt in and to the Morgan county land, and to be

adjudged a lien thereon for the sum of $250, with interest from the date of its receipt by said Wm. Pratt. It further asked that Wm. Pratt be made a party defendant and required to answer and disclose what disposition he had made of the fund received by him for the use of Alex Pratt. The issues between Alex Pratt and defendant were completed by a reply. The defendant Wm. Pratt demurred to the cross-petition, but no action seems to have been taken thereon. During the progress of the action Wm. Pratt died, and the cause was continued for revivor, but does not appear to have been revived. On the hearing by deposition Alex Pratt testified on the material points as follows: He was born on June 7, 1888. At no time did he ever sign a contract for the sale of his interest in his mother's land to either F. T. May or B. L. C. May. Nor did he ever agree to sell his interest to either of them. He remembered that Felix T. May came to his father's house in January, 1902, and that his father sold his interest in his mother's land to Felix T. May, but he knew nothing of the contract or what arrangements were made. All he knew about it was what his father told him. He reckoned that his father was his guardian. He was then presented a written instrument signed by Wm. Pratt, guardian, and Alice Pratt, selling and agreeing to convey to F. T. May "Alice Pratt's part of land allotted to him in the estate of Martha G. Pratt," and denied signing same. His father got $250 for his part of the land, and he guessed that his father put it in land in Morgan county. A part of the land was owned by J. T. Watts. His father still owned his interest in the land. There was further evidence as to the value and number of the trees removed from the land by the Mays. On final hearing the chancellor entered judgment modifying and setting aside so much of the judgment in the partition action as adjudged Felix T. May to be the owner of the tract of land allotted to Alex Pratt, except to the extent of the life estate of Wm. Pratt, and adjudged Alex Pratt to be the owner of the land. He further adjudged that Alex Pratt's claim for timber be offset by the sum of $250 paid by Felix T. May to W. H. Pratt. He also adjudged that the cross-petition against the defendant Wm. Pratt be dismissed without prejudice. From that judgment the Mays prosecute this appeal against Alex Pratt alone.

There is no merit in the contention that this suit is a collateral attack on the judgment in the partition suit,

and cannot be maintained in the absence of allegation and proof that the record of that suit affirmatively showed that the court was without jurisdiction. The suit proceeds on the theory, suported by the fact, that Alex Pratt, who was a defendant in the partition suit, was an infant at the time the various orders were entered, and that neither his condition, nor the error in the proceedings, appeared in the record. That being true, the action is under subsection 5, section 518, Civil Code of Practice, and therefore a direct attack on the judgment. Humphrey v. Holland, 192 Ky. 168, 232 S. W. 642.

It doubtless is true that Alex Pratt, Alec Pratt, Alice Pratt, Elise Pratt are one and the same person. Even if it be conceded that Alex Pratt, who was then under 14 years of age, was a party to the partition suit, and that process issued against him, and the service thereof on his father was sufficient to bring him before the court for the purpose of that action, the case does not stop there. Appellee is not complaining of the judgment of partition. He is willing for that judgment to stand, but attacks the validity of the order directing the land allotted to him to be conveyed to Felix T. May. Not only was Alex Pratt an infant when the court, three years after the judgment of partition, directed the property allotted to him to be conveyed to Felix T. May, but the uncontradicted evidence shows that he did not sign the instrument agreeing to convey the property or receive any portion of the purchase money. On the contrary, it is clear that both his name, and his father's name as guardian, were signed by the father. In short the sale was made by the father who, whether acting as father or guardian, had no authority to dispose of the property. That being true, the sale was void, and, the court not having acquired jurisdiction to order a sale in the manner provided by the Civil Code, it was without power to approve and give effect to the sale by directing a conveyance of the infant's property to the purchaser. Vickers v. Vickers, 189 Ky. 323, 225 S. W. 44; Ford v. May, 157 Ky. 830, 164 S. W. 88. It follows that no title passed to F. T. May, and that the court did not err in so adjudging and restoring the property to appellee.

But the point is made that it is inequitable to permit appellee to recover, and at the same time retain the land in Morgan county purchased with the consideration paid for the land in controversy. If the land in Morgan county

374

had been conveyed to appellee, a different question would be presented. So far as the record shows, the title is in appellee's father. The sale being void, appellee has a clear right to recover the land, and equity will not require him to sue his father for the Morgan county land before proceeding against appellants. Whether appellants are subrogated to the rights of appellee in the Morgan county land, and may proceed against the father, was not determined by the lower court, and we express no opinion on that question.

Judgment affirmed.